## MAPLE v. NELSON.

1. Judicial sale: APPRAISEMENT LAW. A sale of real estate under execution to the judgment creditor or his assignee, for less than two-thirds of the appraisement value, is invalid.

2. —— Nor will the purchaser's title be aided by the claim that his bid, in view of the doubtful title of the judgment debtor or incumbrances existing on the land, was equivalent to two-thirds of the appraised value. Deductions of this character belong to the appraisers, who should appraise the *interest* of the debtor in the property.

3. Trust: PAROL EVIDENCE. To overturn by parol evidence the title to real estate, by showing that it is held by one in trust for another, the testimony must be clear, satisfactory and conclusive.

*Appeal from Lucas District Court.*

THURSDAY, APRIL 20.

ON the 2d day of April, 1868, the plaintiff filed in the Lucas district court, a petition, stating that, on the 18th day of March, 1868, he purchased certain real estate at a sheriff's sale, by virtue of an execution against William Nelson, and received a sheriff's deed therefor. That his title is incomplete, for the reason that, about the 14th of February, 1863, one Robert Nelson, brother of William Nelson, died seized in fee of the W. ¼ of the N. E. ¼, and the E. ½ of the N. W. ¼ of sec. 6, T. 71, R. 20, which includes the land in controversy. That Robert Nelson left as his heirs William Archibald, Matthew James, John and David Nelson, Isabella Scott, Margaret, Arthur, and Ann McBride. That William Nelson purchased the interest of all the other heirs prior to said sheriff's sale. That William Nelson took possession of said premises, improved the same, paid taxes, sold portions of same, and made deeds therefor, and in other ways claimed to be the sole owner; but that for the purpose of defrauding his credi-

tors and defeating petitioner's title he had confederated with the other heirs to withhold the title from him. The petitioner asks a decree quieting the title in plaintiff.

On the 5th day of November, 1868, William and Margaret Nelson filed answer and cross-bill, setting forth that plaintiff's deed was acquired by fraud, and that the land was sold for less than two-thirds of the appraisement. On the same day default was entered as to all the other defendants, which was subsequently set aside as to David Nelson, who thereupon filed answer and cross bill, setting forth that the mere naked title to said lands was in Robert at the time of his death, and that he held the same in trust for David Nelson. That Robert entered the lands with money furnished by David, and took the patent in his own name, always intending to convey to David, but that he died suddenly without having made such conveyance. The defendant, David Nelson, subsequently amended his cross bill, alleging that the sale to the plaintiff was in violation of the appraisement law, and therefore void.

The respective replications of plaintiffs deny the allegations of the cross bills, but admit that the lands were sold for less than two-thirds the appraised value, and allege that the lands were incumbered, that William Nelson's title was defective, and that the sale was made for two-thirds the appraised value, after deducting all liens and incumbrances. It is further alleged that the action of David Nelson, against Robert or his representatives, is barred by the statute of limitations.

On the 3d day of November, 1870, a decree was entered by the court dismissing plaintiff's bill, and quieting title in defendant, David Nelson.

＇ Plaintiff appeals.

*W. H. Maple* and *Stuart Brothers* for the appellant.

*W. S. Dungan* and *Yocum & Robb* for the appellee.

DAY, Ch. J. — I. The question of the sufficiency of the sheriff's sale to vest in the plaintiff the interest of William

**1. JUDICIAL SALE: appraisement law.** Nelson in the land sold, first demands our consideration. The lands were purchased at the sheriff's sale by the plaintiff, who is assignee of the judgment creditor. The S. W. ¼ of the N. E. ¼ was appraised at $300, and sold for $50. The S. E. ¼ of the N. W. ¼ was appraised at $275, and sold for $50. And the price at which the remaining portion was sold is in about the same proportion to the appraisement.

The following are the provisions of the law applicable to this question: "That no goods, chattels, lands or tenements shall be sold on execution issued from any court for less than two-thirds the fair value thereof, at the time of sale, exclusive of all liens, mortgages or incumbrances thereon." * * *

" For the purpose of ascertaining the value of property to be sold on execution, two disinterested householders of the neighborhood shall be selected as appraisers." * *

"Whenever any property thus appraised cannot be sold for two-thirds of its valuation, it shall be the duty of the officer by whom such levy shall have been made, when he returns such execution to return such appraisement therewith, stating in his return such failure to sell." Rev., §§ 3360, 3362 and 3365.

There is no little conflict in the decisions as to the effect of a sheriff's sale. Some courts hold that the return of the sheriff must show a strict compliance with all the requirements of the statute; others, that the purchaser relies upon the judgment, the levy and the deed, and that all other questions are between the sheriff and the judgment defendant. It is to be observed that this is a case not merely of irregular appraisement, but one in which the property was sold by the sheriff to the judgment creditor for one-sixth the appraised value.

In *Collier* v. *Stanhough*, 6 How. (U. S.) 21, it was held, under a statute of Louisiana, similar to our own, that the power of the officer to sell depended upon the appraisement, and that a sale without appraisement was void.

In *Morse* v. *O'Neal*, 2 Carter, 65, it was held, that, where the statute required an appraisement of property, a sale without appraisement was void, and the purchaser acquired no title. To the same effect is *Holman* v. *Collins*, 1 id. 24, in which the court said: "There is no more hardship in requiring a purchaser to inform himself of the appraised value of the property than there is in requiring him to know of the judgment and execution. The appraisement must be in writing, must be taken by and lodged with the sheriff before the sale, and must be returned with the execution. We do not see why it is not as easy of access as the execution itself to one desiring to become a purchaser." In *Patrick* v. *Oosterout*, 1 Ohio, 27, it was held that lands sold upon execution under a statute requiring appraisement must be valued and the appraisers sworn, or the sale would be void. In *Allen* v. *Parish*, 3 Ohio, 188, the rule was so far modified as to sustain a sale made to a stranger without appraisement. And this doctrine has been recognized and followed in the subsequent cases of *Ludlow* v. *Johnson*, 3 Ohio, 553, and *Stall* v. *McAllester*, 9 id. 19.

It has been held in our own State that the matter of valuation under an appraisement law is not merely directory but a question of power on which depends the validity of the sale. *Sprott* v. *Reid*, 3 G. Greene, 497. The case of *Harrison et al.* v. *Rapp*, 2 Blackf. 1, is upon all fours with the present. The statute provided, that no real property should be sold upon execution for less than one-half its real value; to be ascertained by appraisement. The property in controversy was appraised at $4,640 and purchased by the plaintiff in the action, who was also the execution plaintiff, for $565. It was held that the sheriff's

sale was void, and that his deed conveyed no title to the purchaser; and that, if the purchaser of real estate at a sheriff's sale be the execution plaintiff, he is considered a purchaser with full notice, and accountable for all irregularities. No decision, sustaining, under the circumstances of this case, the title of a purchaser at sheriff's sale, has fallen under our notice. The Revision, section 3365, provides that "upon the completion of such appraisement, the said appraisers shall return to the officer a schedule of the property appraised, with the value of each lot, tract, or parcel of real estate, and of the several articles of personal property which may have been levied upon by virtue of such execution." Thus the purchaser at the sale has the means of ascertaining both the fact and the amount of the appraisement. And certainly it does not demand of him any thing unreasonable to require him to do so. We are not now called upon to determine how a stranger, or one acquiring title under a purchaser at the sheriff's sale, would be affected by the defect here complained of. The plaintiff in this case is the assignee of the judgment, and thus stands in the place of the judgment creditor, and we are of opinion that the title which he acquired at the sheriff's sale is invalid. The plaintiff insists that the title of the judgment debtor was doubtful, and that in view of such fact his bid was two-thirds the appraised value, deducting liens and incumbrances. It would be an evasion of the appraisement law to allow a party to bid in property at a nominal sum, notwithstanding the appraisement, because the title of record was not in the judgment debtor, and afterward by decree of court have the title vested in him, because the judgment debtor was in fact the owner. The proper course is first to ascertain the *interest* of the debtor, and then to appraise and sell that interest. As the purchaser's title is invalid, it follows that the plaintiff's petition was properly dismissed.

II. We next consider the claim of David Nelson, that

the lands in question were entered with his money, and the title held in trust for him by Robert. A party who seeks by parol evidence to overturn the legal title to real estate, and establish a trust therein, must do so by evidence which is clear, satisfactory and conclusive. *Corbitt* v. *Smith,* 7 Iowa, 60; *Cooper* v. *Skeel,* 14 id. 578; *Parker* v. *Pierce,* 16 id. 227. Without examining the evidence in detail, we are of opinion that it does not clearly and satisfactorily establish the facts alleged in David Nelson's cross bill. Many portions of his own testimony are inconsistent with his demand. The lands were entered in 1853.

**3. TRUST; parol evidence.**

David Nelson testifies: " When he (Robert) left with the money to make the purchase, it was his understanding, as well as mine, that the lands purchased by him were to be mine. When he returned from Iowa, the same understanding was had between us. *He then told me that the land was entered in his name, but that at his death I should have the land.*"

The conduct of Robert, in claiming the land until his death, and that of David, in acceding to the claim, is altogether inexplicable upon the theory that the lands were entered for David with money furnished by him. Further, David testifies that William went "to the land in Lucas county, Iowa, *owned by Robert,*" and that " William had sold his land, and I wrote to him to go on to *Robert's land* and improve it." This appears to be an involuntary recognition of the facts as to the ownership. William Nelson, in his deposition, says: " At the time I moved on to it, it belonged to my mother during her lifetime, and then it would belong to the heirs." These statements in the testimony, together with others which might be specified, inconsistent with defendant's ownership, in connection with the fact that for sixteen years after the entry, and for six years after the death of Robert, he made no claim to the property, lead us to the conclusion

that the evidence does not sustain his demand, and that his cross bill should have been dismissed. The long and unexplained delay of defendant is a strong circumstance against him. *Sunderland* v. *Sunderland*, 19 Iowa, 325.

III. Coming now to a consideration of William Nelson's interest in the property, many of the suggestions made with regard to the claim of David are applicable. The plaintiff is attempting to establish an equitable interest in William, in opposition to the legal title, and he, too, must do so by proof clear and satisfactory. While the evidence may lead to some probable inferences that William had a contract with the other. heirs for the purchase of the property, yet we are constrained to the conclusion that neither the terms nor the existence of such contract is clearly established. As an heir of Robert, William owns an undivided one-seventh of the property, upon which plaintiff's judgment is a lien, and which the plaintiff may subject to the satisfaction of his claim in such manner as he may be advised. And as, owing to the invalidity of the sheriff's sale, he is not in a condition to obtain affirmative relief, his petition will be dismissed without prejudice to his right to subject the interest of William Nelson to the satisfaction of his judgment.

The decree of the court below dismissing the plaintiff's petition is affirmed, and that settling the title of the property in controversy in David Nelson is reversed.

The decree of the court sustaining the cross bill of David Nelson is reversed, and the cause is remanded for decree in harmony with this opinion.

Reversed.