HOMER FRAME, Trustee, Appellee, v. O. W. WRIGHT, Appellant; RUBY WRIGHT, Intervener, Appellant.

No. 46222.

MAY 4, 1943.

G. C. Stuart, of Chariton, for appellants.

A. V. Hass, of Chariton, and E. A. Johnston, of Corydon, for appellee.

MILLER, J.—■ The litigation involved herein was originally commenced June 24, 1941, by the Confidence State Savings Bank, a banking corporation in the process of liquidation, for the purpose of collecting a note for $1,784.69, executed by defendant, Oland W. Wright, February 8, 1934. Plaintiff alleged that defendant was about to dispose of his property with intent to defraud his creditors. The prayer of the petition demanded judgment on the note and that a writ of attachment issue. An attachment was issued and a levy was made upon 80 acres of land, title to which is in the name of defendant's wife, Ruby Wright. On May 1, 1942, by stipulation, an order was made substituting Homer Frame, trustee in bankruptcy, for O. W. Wright, as party plaintiff.

In the meantime, O. W. Wright had filed an answer, admitting that he had executed certain promissory notes to the plain-

tiff bank, on information and belief denying the note sued on and the present ownership thereof, denying that the real estate attached was his real estate or that he was the owner thereof and asserting that the same is the absolute property of his wife, Ruby Wright. On April 18, 1942, Ruby Wright had intervened asserting that she is the absolute owner in fee simple of the real estate levied upon, setting forth copies of the deeds whereby title thereto was conveyed to her, also asserting that she had notified the sheriff that she was the absolute owner of the real estate and that, unless the attachment be released forthwith, she would hold him and his bondsmen liable for damages.

On May 1, 1942, the substituted plaintiff filed answer to the petition of intervention wherein he admitted the several conveyances relied upon and the service of notice of ownership but denied that Ruby Wright is the owner of said real estate, asserted that she holds the record title in trust for her husband, Oland Wright, that the conveyances to her were for the sole purpose of hindering, delaying, and defrauding the creditors of Oland Wright, particularly the Confidence Savings Bank, and that Oland Wright is the beneficial owner of said land.

By stipulation, the cause was transferred to equity and was there tried with the understanding that the action be treated in the nature of a creditor's bill to reach the assets of Oland Wright. It was stipulated that Homer Frame, trustee, had been authorized to prosecute the action, the discharge in bankruptcy has been withheld pending the determination of the cause and claims have been allowed in bankruptcy which cannot be paid from the scheduled assets of the bankrupt. The plaintiff introduced in evidence the note sued on and testified as to its ownership. The defendant, as a witness, admitted the execution and delivery of the note. Accordingly, the indebtedness which inspired the litigation is not disputed. The sole question is whether or not the tract of approximately 80 acres, standing in the name of the intervener, Ruby Wright, is property in which the defendant, O. W. Wright, has an interest which may be reached for the purpose of liquidating his debts. The court found from all the evidence in favor of the plaintiff, entered judgment in rem for the amount of the note with interest, and sustained the lien of the attachment. Defendant and intervener appeal.

The real estate in question consists of an 80-acre tract formerly owned by T. R. Wright. His real estate included this 80-acre tract, a quarter section, a 40-acre tract, and a 115-acre tract. T. R. Wright was the father of Oland Wright and died testate August 21, 1919. By his will he devised to his wife, Sarah A. Wright, all his property, real and personal, during her lifetime, and at her death to their children, in equal shares. The widow took under the terms of her husband's will and died testate November 9, 1932. There were five children, Oland W. Wright, Claude W. Wright, Homer G. Wright, Oma Gookin, and May Linville. Oland Wright became financially embarrassed and was advanced $5,000 by his mother, in consideration of which he and his wife, Ruby; quitclaimed on February 15, 1928, to Sarah A. Wright, all of their interest in the real estate of T. R. Wright. In the will of Sarah A. Wright it is recited that she had advanced to Oland Wright said sum of $5,000 and that his vested remainder in the real estate of T. R. Wright had been quitclaimed to her in consideration thereof. Similarly, Homer G. Wright had been advanced $5,000 by his mother and had quitclaimed his remainder to her, so that the widow owned two fifths of the real estate at the time of her death. She had also made an advancement of $1,360 to May Linville.

In devising the real estate owned by her, the will of Sarah Wright provided as follows: .

"Therefore I now give, devise and bequeath unto my said children to-wit: Claude W. Wright, May Linville, Homer G. Wright, Oland Wright, and Oma Gookin, all of the property of every kind and character, of which I may die seized but in making distribution of it among my children, and the property left by my deceased husband, to them, I want the advancements heretofore made and set out by me to be charged out of said estate so that when the estate is fully divided that the division thereof will be absolutely equal; I want Homer G. Wright charged with $5,000.00; Oland Wright charged with $5,000.00 and May Linville charged with $1,360.00 before they participate in any way in said estate; and if said estate including the advancements amounts to more than the greatest amount distributed, to-wit:

$5,000.00, for each child, then that amount is to be made up to them so that all will be equal.''

On February 11, 1935, Oland Wright and his wife, Ruby, executed a quitclaim deed to May Linville, C. W. Wright, and Oma Gookin, conveying their interest in all land owned by either T. R. Wright or Sarah A. Wright at the time of the death of either of them. On the same day, a similar quitclaim deed was executed by Homer G. Wright and his wife to the same grantees. Oland Wright testified that he had received through his mother in paying obligations for him more than his interest would be in his father's estate. It is the theory of the defendant that neither Oland nor Homer qualified under the provisions of their mother's will to share in the real estate which they had quitclaimed to her and of which she died seized and that this is the explanation for such quitclaim deeds. It might be added that, in these proceedings, no effort has been made to challenge the legal effect of Oland's quitclaim deed to his mother of his vested remainder in his father's real estate nor is any attempt made to set aside the conveyance by him and Ruby of his interest in the real estate under the provisions of his mother's will.

The intervener, Ruby Wright, acquired title to the 80 acres involved herein by virtue of a quitclaim deed dated April 23, 1940, from Oma Gookin, May Linville, C. W. Wright, and their respective spouses, which was recorded June 28, 1941, as qualified by a correction deed from the same grantors, dated July 28, 1941, and recorded August 14, 1941. It is the contention of the plaintiff that the conveyances vested in Ruby Wright the naked legal title to the real estate and that the beneficial interest was conveyed to Oland Wright. There is some controversy in the briefs over the burden of proof and the character of the evidence required to sustain it. This controversy apparently is obviated by the statement of plaintiff's counsel in the reply brief, as follows:

''* * * We accept the conclusion that the burden of proof is upon the appellee (plaintiff) to make out his prima facie case and to establish the existence of the resulting trust by clear, satisfactory and convincing testimony.''

The theory of the plaintiff is that the transaction accomplished a resulting trust under the rules announced by us in Dunn v. Zwilling Bros., 94 Iowa 233, 238, 62 N. W. 746, because, under all the facts, either Oland Wright was the purchaser, and paid the only consideration given for the conveyance, taking title in the name of another, or the conveyance was made without consideration, and it appears from all the circumstances that the named grantee was not intended .to take beneficially.

As heretofore stated, the quitclaim deeds of Oland and Homer, dated February 11, 1935, vested in Claude W. Wright, May Linville, and Oma Gookin the title to all of the real estate previously owned by their father and mother to the exclusion of Oland and Homer. The quitclaim deed to Ruby of the 80-acre tract involved herein was dated April 23, 1940. On the same date May Linville and husband quitclaimed to C. W. Wright and Oma Gookin the quarter section of their father's land; Oma Gookin and C. W. Wright, and their spouses, quitclaimed to May Linville a 40-acre tract. By these deeds, all dated April 23, 1940, the 395 acres, originally owned by T. R. Wright, were distributed as follows: Oma Gookin and C. W. Wright owned 160 acres, May· Linville 40 acres, Ruby Wright 80 acres, and the balance of 115 acres was retained by May Linville, Oma Gookin, and C. W. Wright. Homer Wright owned none of the land and Oland was benefited only, if at all, by the deed to his wife Ruby.

The deed to Oma and Claude, dated April 23, 1940, was recorded June 7, 1940, and that to May was recorded July 16, 1940. As above stated, the deed to Ruby was not recorded until June 28, 1941. There was testimony and the court found that the deed to Ruby was originally executed in blank and her name was not inserted as grantee until on or after June 20, 1941. It is plaintiff's theory that Ruby's name was inserted after this litigation was commenced and for the sole purpose of concealing the fact that the farm was Oland's, as a result of which Ruby holds only the naked legal title and the beneficial interest is owned by Oland.

Following the death of T. R. Wright, Oland and Ruby

had lived with Oland's mother, Sarah, until 1923, when they moved on a farm that Oland contracted to purchase. He lost this farm in 1930 and they moved back with his mother, residing with her until her death, November 9, 1932. They continued to live on the home farm until 1935, when they moved onto an 80-acre tract which was purchased by Ruby assuming a mortgage thereon. They were still living on this 80 at the time of trial and the record is undisputed that it is Ruby's 80. Prior to 1940, Oland rented 120 acres of his brother and two sisters; 80 acres of it constitute the tract in dispute, title to which is held by Ruby; the other 40 acres constitute the parcel that was conveyed to May Linville in 1940, at the time Ruby's deed was executed in blank. The quarter section was rented to Homer. The 115-acre tract is referred to as timber land. Oland and Homer were each to pay the taxes on the tracts rented to them and each pay one half the taxes on the 115 acres of timber land. Oland paid no taxes until 1938.

Plaintiff produced five witnesses who were neighbors of Oland and Ruby and who testified to various conversations with them in 1940 and 1941 wherein statements were made by Oland or Ruby, and often in the presence of the other spouse, that the 80 where they lived was Ruby's and the other 80 that Oland then farmed, attached herein, was Oland's. The assessor testified that Ruby signed the assessment roll for 1940 taxes due in 1941 as the owner of the 80 where they lived, and Oland in Ruby's presence signed the assessment roll as owner of the 80 attached herein. The assessor's records were introduced in evidence. One witness testified that Oland offered in 1940 to sell the 80 involved herein, in Ruby's presence, and referred to it as his 80. In 1941 Oland rented this 80 and on June 23, 1941, commenced an action of forcible entry and detainer before a justice of the peace, wherein the petition, verified by Oland, alleged that Oland was the owner of the real estate. The present action was commenced and the attachment levied on June 24, 1941, the day after the action of forcible entry was commenced. The deed for the 80 acres, attached herein, was delivered to Oland a day or so before it was recorded on June 28, 1941, and Ruby's name was inserted therein about the time that it was delivered to Oland. The foregoing is the testimony

on which the plaintiff relies primarily and upon which the court based its decision.

Oland and Ruby denied making the declarations testified to by the five neighbors and seek to discredit said witnesses. One of them felt that Oland was undermining him on a land deal. One was the tenant that Oland sought to oust and another was his son; these two testified that Ruby read to them a deed of the 80 to Oland. Ruby and Oland deny that there was any such deed and the court found that the deed to Ruby was not delivered until after the forcible entry action was commenced. Oland testified that he signed the petition in the latter action without reading it. His lawyer testified that he assumed Oland owned the farm. Oland testified that the assessor told him that the signature on the roll did not mean anything. Oma Gookin and May Linville testified that the deed eventually made to Ruby was left blank because they and Claude were undecided what to do with the 80; Oland had said he wanted to buy it; they finally decided to let Ruby have it; she was to pay what she could; if she could not pay anything it would be all right; at the time of trial she had paid about $175; they all knew that Oland was indebted to the bank at Confidence.

There was other evidence, of course. The foregoing is intended to constitute merely a summary of it. The evidence is conflicting. The credibility of the witnesses is a very important, almost the decisive factor in determining the facts. Under such circumstances considerable weight is given to the findings of the trial court who saw and heard the witnesses. Panama Sav. Bk. v. Arkfeld, 228 Iowa 313, 318, 291 N. W. 182, and cases cited therein.

The trial court recognized that, for plaintiff to recover, it was necessary that he establish, by clear, satisfactory, and convincing proof, that Oland Wright had an equitable interest in the 80-acre tract and that the only interest of Ruby Wright is the naked legal title. He found that Oland had no interest therein by inheritance or devise; if any interest was acquired it was by conveyance; the conveyances of April 1940 distributed the property of T. R. Wright; the grantors had expressed an intention to do something for Oland; they knew of his indebt-

edness to the bank, so that it would be dangerous to put the title in Oland's name; it was finally decided to name Ruby as grantee; they felt no obligation toward her; the five neighbors who testified were the closest neighbors of Oland and Ruby and testified positively that Ruby stated that the 80 in question belonged to Oland; there is a chain of corroboration which supports their testimony. The court was satisfied that Ruby stated to each of these five witnesses that Oland owned the 80 in question and that the evidence is clear, satisfactory, and convincing that the land conveyed to Ruby was intended for the use and benefit of Oland.

The trial court assumed that the evidence herein reviewed is competent to establish plaintiff's theory. If such assumption be correct, then there might be considerable force to plaintiff's contention that, giving to the court's findings the weight to which they are entitled, particularly on the issue of the credibility of the witnesses, we should not disturb such findings of fact. But defendant and intervener challenge the competency of the evidence. This presents a vital issue and a troublesome one.

The cause was tried, pursuant to a practice which seems to prevail in the third judicial district, upon the following stipulation:

"It is further stipulated and agreed that the evidence in said case shall be taken subject to any and all legal objections which might be inserted by any of the parties hereto against the introduction of any of said testimony. This also includes any written evidence and the competency of any witness."

Because of said stipulation, no specific objections were interposed to the evidence offered by plaintiff, and defendant and intervener present to us a blanket challenge of the competency of such evidence, relying upon sections 10042, 10049, and 11285, paragraph 3, Code, 1939.

Section 10042 provides:

"Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used."

Section 10049 provides:

"Declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law."

Section 11285 provides:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent: * * * 3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year."

Plaintiff meets this challenge with the contention that parol evidence is competent, under section 10049, to establish a resulting trust.

As above pointed out, plaintiff's theory of a resulting trust is based upon one of two propositions: (1) that Oland paid the consideration for the conveyance to Ruby and took title in Ruby's name or (2) that the conveyance to Ruby was without consideration and it appears from the circumstances that Ruby was not intended to take beneficially. There is no justification for the first contention. Oland is not shown to have paid anything for this 80. Affection toward him by the grantors is not sufficient consideration to support a resulting trust on the theory that the consideration for the conveyance was paid by him. Acker v. Priest, 92 Iowa 610, 618, 619, 61 N. W. 235. As to the question whether it can be shown by parol evidence that the conveyance to Ruby was without consideration and that she was not intended to take beneficially, the case of Acker v. Priest, supra, at pages 616 and 617 of 92 Iowa, pages 237 and 238 of 61 N. W., would seem to answer again in the negative.

In the case of Acker v. Priest, supra, at the pages last cited, we quote from Pomeroy on Equity Jurisprudence. Statements to the same effect appear in sections 1035 and 1036 of 4 Pomeroy's Equity Jurisprudence, 5th Ed., 1941, 67. From these it is

obvious that the resulting trust, which the law creates from a gratuitous conveyance wherein the grantee is not intended to take beneficially, is a trust in favor of the grantor making the conveyance. We find no decisions of this state which have ever suggested that the law would create from a gratuitous conveyance a resulting trust in favor of a stranger to the conveyance.

The cases upon which plaintiff relies to support his contention that a resulting trust may be proven by parol evidence are not in point. In re Estate of Mahin, 161 Iowa 459, 143 N. W. 420, and Cotton v. Wood, 25 Iowa 43, are cases where the consideration for the conveyance was paid by one other than the grantee named therein. As above pointed out, this is not such a case. The case of Durband v. Nicholson, 205 Iowa 1264, 216 N. W. 278, 219 N. W. 318, and cases cited therein, are cases where the resulting trust was created by operation of law because of mistake or fraud. No mistake is claimed herein. No fraud has been proven. Oland did not own the 80 here conveyed and the gratuitous conveyance of it to Ruby would not constitute fraud of plaintiff. State Bank of Woolstock v. Schutt, 174 Iowa 583, 156 N. W. 762.

We hold that no resulting trust was established herein. The trust, which plaintiff attempted to prove, must be classified as an express trust. Under the statutes of this state, such a trust cannot be established by parol evidence. Hospers v. Watts, 209 Iowa 1193, 1196, 229 N. W. 844. We do not understand plaintiff to claim that the evidence was sufficient to establish an express trust. But if the contentions made could be so interpreted, we hold that the competent evidence herein is insufficient to establish such a trust.

The decree is—Reversed.

GARFIELD, C. J., and MULRONEY, OLIVER, HALE, SMITH, BLISS, and MANTZ, JJ., concur.