S. B. SINCLAIR, Appellee, v. EARLE E. ALLENDER et al., Appellants.

ºNo. 46942.

MARCH 11, 1947.

Lake M. Crookham and H. S. Life, both of Oskaloosa, for appellants.

Irving C. Johnson and John S. Sproatt, both of Oskaloosa, for appellee.

BLISS, J.—Plaintiff died after the decree was entered in the district court and the decree is being defended in this court by the executrix of his estate. The defendants are the sons, by an earlier marriage, of Etta Sinclair, wife of plaintiff, who preceded him in death. They were married in 1925 and that relation continued until her death on May 23, 1944.

On October 26, 1945, plaintiff filed his petition in this suit, alleging that he was the absolute owner in fee simple of the north half of Lots 7 and 8, in Block 15, of Montgomery's Ad-

dition to Oskaloosa, to which, he alleged, the defendants made some claim. He also alleged that: He acquired this property by written contract with John Hoar on September 26, 1932, in an exchange of properties, with no money changing hands; in consummation thereof, Hoar and wife, on April 24, 1935, caused to be executed and delivered to the plaintiff a warranty deed to the property, which, by inadvertence or mistake and without the knowledge of plaintiff, was drawn to S. B. Sinclair and Etta Sinclair instead of to plaintiff alone; plaintiff furnished the entire consideration for the purchase of the property, and Etta Sinclair, who was then his wife, furnished no part thereof; plaintiff and his wife occupied the property as their home and homestead until her death, and he so occupied it thereafter; he furnished the money for some improvements, repairs, and taxes; he had but recently obtained knowledge of the contents of said deed, apparently granting to his wife an undivided one-half interest in the property; by reason of the matters alleged, a resulting trust is raised, and his wife, though named as one of the grantees, held title to the property as trustee of the plaintiff, and the defendants, as her heirs, have no interest in the property. Plaintiff prayed in the petition for a decree establishing a resulting trust in the premises in favor of himself as cestui que trust, and that he be decreed absolute owner, and that title be quieted in him as against defendants and any claiming under them.

Defendants filed answer and amendment thereto and alleged that: Plaintiff was not the absolute owner of the entire property, as he and his wife each owned a half interest therein, and that they inherited her interest; this property was acquired by plaintiff and his wife while they were husband and wife and living together; the deed was executed to them on January 29, 1935, and that at all times since plaintiff has known that the title was in him and his wife; at no time did plaintiff make any complaint to his wife or claim to be the absolute owner of the property at any time prior to the commencement of this action, but did, on the contrary, make statements showing he claimed only an interest in the property; plaintiff at various times made loans on the property and each time had the abstract continued

and delivered it to the person making the loan; he always consulted with his wife about the loans and sometimes consulted with defendants; his wife owned real estate in Oskaloosa when she married plaintiff, which was sold and the proceeds paid on the property involved herein, in which she had an actual interest; this claim of plaintiff was never asserted before the filing of his petition, and plaintiff had knowledge at all times prior thereto from the date of obtaining the deed on January 29, 1935, and plaintiff, if he had a cause of action has waived it and is guilty of laches, and is estopped thereby from bringing this action after ten years, and after the death of his wife; and as further answer allege that the deed was executed and delivered on January 29, 1935, and was duly recorded on April 20, 1935, and they mortgaged the property to L. M. Bacon on January 29, 1935, and plaintiff and his wife owned the property since that time to her death, and plaintiff made no claim of being its absolute owner for more than ten years after the delivery and recording of the deed, and is now barred by the statute of limitations from pressing any claim as absolute owner of the property. Defendants prayed that the petition be dismissed on its merits and that plaintiff be required to make his statutory election, and that defendants' rights be established as heirs of their mother.

By reply plaintiff denied that his wife paid any part of the consideration; denied that he had any knowledge of the inclusion of his wife's name in the deed for ten years prior to the commencement of the suit; denied laches on his part; denied that his suit was barred by the statute of limitations; and alleged that if his wife had any interest the statute did not commence to run until she asserted adverse possession.

Plaintiff sought to prove the allegations of his pleadings solely by his own testimony and the contract of exchange with Hoar. He and his wife took possession of this property in October 1932. At the time of the execution of the exchange contract on September 26, 1932, plaintiff held a contract with the Hawkeye Lumber Company as vendor, for the purchase of the north sixty-six feet of Lot 4, Block 23, of the original plat of Oskaloosa. This was the property which was exchanged to Hoar for the property involved in this suit. At this same time

Hoar also had a contract with the Hawkeye Lumber Company for the purchase of the south fifty-four feet of said Lot 4, Block 23. Both Hoar and plaintiff were to clear their respective properties of all encumbrances before the exchange was consummated by the execution of deeds. Each was to pay the taxes on the property he received for the year 1932 and all subsequent years. Plaintiff's contract with the lumber company called for monthly payments. Plaintiff testified that he sold the south half of the property he held under contract to Hoar, and thereby paid the balance owing on his contract, but this is contrary to the recitations of the exchange contract, which, as noted above, states that Hoar bought the south fifty-four feet of said Lot 4, not from plaintiff but from the lumber company. The record shows that plaintiff never sold any part of the north sixty-six feet of Lot 4 to Hoar or to anyone else until he exchanged it with Hoar.

Plaintiff testified that he never knew anything about the execution or the delivery or the recording of the deed of the property involved, which was executed by Hoar and wife to plaintiff and wife on January 29, 1935. He testified:

"I never saw the deed until the first day of December, 1945. The deed was never delivered to me. I do not know to whom the deed was delivered. Somebody had it out of my sight; I do not know who it is. * * * I don't know who took this deed over to the recorder's office and had it recorded. I do not know who prepared the deed. Mr. Johnson [his attorney in this case] made the agreement to make the trade of property for me. Mr. Johnson drew that agreement. In part he was looking after my business at that time. He was my attorney in that case. * * * He did not prepare the deeds to transfer the property at that time. I do not know whether he looked after the deeding of the property for Mr. Hoar and me. I don't think so. I don't know who looked after it for me. Didn't have anybody. Q. And you didn't look after it yourself? A. Well, somebody got the deed and took it out of my sight until it was recorded. Q. I didn't ask you that. I asked you who was supposed to look after this transfer of these deeds for you; who did you instruct to do that? A. Well, at that time, the time wasn't ripe for a

deed to pass because this property wasn't clear for a deed then. The Home Loan had a loan on this and couldn't make a deed at that date."

The record, by documentary evidence, directly refutes this last answer, as we will show.

By very leading and suggestive questions, an attempt was made to explain the mystery of the execution of this deed, on redirect examination:

"Q. You told Mr. Crookham that you didn't know where this deed was delivered. Isn't it a fact that this deed was delivered to the Oskaloosa Home Loan Association because they had the mortgage on this property? A. I presume they did. Q. When you come to recall, isn't that the fact, that it was to be given to the Oskaloosa Home Loan Association because they had a mortgage on it? A. Yes. * * * Q. Now isn't it true that when you told Mr. Crookham that you knew she had— Etta [Mrs. Sinclair] had—a half interest in it all the time; isn't it true that what you intended to say was that she had an interest as your wife, isn't that true? A. That is it, absolutely."

Such testimony carries its own refutation on its face. But the record discloses more. Plaintiff put Carl Johnson, an abstracter, on the stand. He testified:

"I am not sure whether I have ever seen Exhibit 'B' [the deed of January 29, 1935]. I think it is a typewriting of a machine in my office. There is no other machine I know of in Oskaloosa that has that size type. * * * I do not know who was present at the time that was written and I do not know who asked me to prepare that deed. The Home Loan quite often calls us and asks us to make a deed. When I prepare deeds under those circumstances, the unsigned deeds go ordinarily right with the report to the Home Loan and Savings Association. I make a report to the said association of that with a form of that deed. We make a report of the condition of the title, what we call a 'yellow slip,' and if we are asked to prepare the deed, why, we prepare the deed and attach it to the slip and send it over."

Plaintiff did not procure anyone from the loan association to testify. The burden of proof was on the plaintiff at all times.

There was no occasion for the abstract company, or for anyone, to prepare a deed to this property or a report on its title for the Oskaloosa Home Loan and Savings Association. Hoar had performed his part under the exchange contract. He had cleared this property of all encumbrance except taxes and special assessments, as his deed of January 29, 1935, recites. He had paid the mortgage on the property held by the loan association. He and his wife had executed this mortgage on May 27, 1930. It was recorded on page 214 of book 73. On the margin of that page is a notation, signed by the president of the loan association, stating:

"Full payment and satisfaction of this mortgage is hereby acknowledged and the same is hereby discharged · of record this *29th day of January, 1935* * * *." (Italics supplied.)

The title to this property was clear when the deed was executed and delivered. Plaintiff's petition alleged that it was "executed and delivered * * * *to this plaintiff* * * * on the 24th day of April, 1935." (Italics supplied.) This is an error in the date, but plaintiff admits its execution and delivery *to him*. There was, of course, no reason whatsoever why it should not have been delivered to him.

Furthermore, plaintiff installed a furnace in the house. Apparently the Holland Furnace Company did the job. For on February 8, 1935—ten days after the deed was executed and delivered—S. B. Sinclair and Etta, his wife, executed a mortgage on this property to the Holland Furnace Company, recorded the same day, for $211.47, due $5 a month. He was to receive an abstract of title from Hoar under his contract. He admitted having such abstract. His deed had not been recorded on February 8, 1935. The furnace company would wish to be assured about the ownership of the property, and it is reasonable that, at their request, the plaintiff produced for them the abstract *and the deed*.

Plaintiff and wife placed another mortgage for $60 on the place on May 11, 1937, which was released, and another mortgage for $700 on February 10, 1942, which the record does

not show to be released. He admitted that he had the abstract continued on each occasion and delivered it to the mortgagee. He admitted he knew just how the title stood of record. The Hoar deed appeared on the abstract and it is fair to assume that he saw that it showed him and his wife to be grantees. Under the record, one would indeed be a credulous person to believe that plaintiff did not see the deed until almost eleven years after its execution.

He admitted that he knew the record title stood in the names of both of them, because he learned this fact when he received his first tax receipt after the execution of the deed. He thought this was in 1936.

He admitted that his wife had a furnished home which she sold and that he received $300 therefrom, but stated that he used that to pay for repairs and household expenses during the death of his wife's parents. When this property was sold does not appear. Her father lived with them and was a Civil War pensioner. He did not remember that the pension was $75 a month, but said that while he lived with them the father contributed nothing to the family expense. He testified:

"No, I never got his pension. He took a trip to Des Moines and blowed it in and then come back."

The record indicates that plaintiff at all times had very limited means. What his work was does not appear. He gave no information of any source from which he procured any money to pay the installments on the contract with the Hawkeye Lumber Company. The defendants testified that in 1942 he tried to get his wife to cash insurance which she carried and give him the money. The relations between plaintiff and his wife were pleasant. He said:

"She was a good housekeeper and a good wife. Never had any trouble. She kept my home for me and did my cooking. I never had any complaint of the work that she did for me."

She had a piano and other furniture which was moved into the later home.

There is no evidence that he ever made any objection to her about the way the title stood after he saw the tax receipt

in 1936. He testified when one of the mortgages was made that he knew the title stood in the names of both of them. When asked if he then made any objection to her, his answer was:

"Don't remember of it. * * * Q. Now after you went up to pay the taxes in 1936, from that time on you knew your wife had an interest in this property? A. Yes, I did. I just let it ride; couldn't do anything else. I didn't want to raise a fuss."

He preferred to and deliberately waited until she was forever past making any fuss. The defendants testified, without denial from the plaintiff, that after their mother's death he never made any claim to them that he was the sole owner of the property until the suit was brought. He asked them for deeds to the property.

Property trusts may arise in various ways. A very great many actions concerning them have been before this court since its organization. The principles of law involved in them are well recognized and of long standing. Justice Story defined a trust as "an equitable right, title, or interest in property real or personal, distinct from the legal ownership thereof." 2 Story's Equity Jurisprudence, 648, section 1304; Dillenbeck v. Pinnell, 121 Iowa 201, 203, 96 N. W. 860. Usually a trust relation involves three persons—the trustor, the trustee, and the cestui que trust or beneficiary. The trustor and the beneficiary may be the same person. Trusts may arise by agreement or intention. Or, without either, the circumstances may be such that a trust will arise by implication or operation of law. Such trusts are commonly called implied or resulting trusts, and sometimes constructive trusts, although, properly speaking, a constructive trust is one arising from fraud, either actual or constructive, or the essence of the trust is wrongdoing of some kind.

Plaintiff is claiming a resulting trust. He claims he owns the property—that he furnished the consideration—and is therefore entitled to the beneficial use of the property, notwithstanding the legal or record title to half of the property was in his wife. He makes no claim that the trust arose through the intention, understanding, or agreement of anybody. It is

not a case where one person furnished the consideration to another and the latter took title in himself. Typical cases of this kind, taken at random, are, Noel v. Noel, 1 (Clarke) Iowa 423; Sunderland v. Sunderland, 19 Iowa 325; Johnson v. Foust, 158 Iowa 195, 199, 139 N. W. 451. He does not expressly claim that his wife did that. Neither is it the rather common case where one puts his money into property and deliberately takes title in another. Culp v. Price, 107 Iowa 133, 77 N. W. 848; Amidon v. Snouffer, 139 Iowa 159, 161, 162, 117 N. W. 44; In re Estate of Mahin, 161 Iowa 459, 143 N. W. 420. He denied this. Nevertheless we believe that this is what the record establishes was done.

Nor can it be said to be a constructive trust arising from wrongdoing, as in New York L. Ins. Co. v. Clemens, 230 Iowa 279, 297 N. W. 253, and discussed in Hermann v. Hermann, 193 Iowa 1201, 1203–1205, 188 N. W. 806, although he vaguely intimates, but wholly fails to prove, that the drawing and execution of the deed came about through some mistake, inadvertence, or intentional and wrongful concealment. In sum, his sole contention is that he furnished the consideration and owns all of this property absolutely and is entitled to its beneficial use, and that the title and ownership should be established and quieted in him by decree. His difficulty—and it is the usual one in this class of litigation—is in the proof.

I. There is no question about the well-established principle of equity, quaintly but succinctly expressed, in Claussen v. La Franz, 1 (Clarke) Iowa 226, 235, "that the land is *his*, to whom the money belonged." This court has often repeated the thought. Sullivan v. McLenans, 2 (Clarke) Iowa 437, 65 Am. Dec. 780; Sunderland v. Sunderland, supra, 19 Iowa 325, 328; Amidon v. Snouffer, supra, 139 Iowa 159, 161, 117 N. W. 44; Cotton v. Wood, 25 Iowa 43, 46; Andrews v. Oxley, 38 Iowa 578, 580.

II. This court has many times expressed itself on the clarity, the certainty, and the weight, exceeding preponderance, of the evidence necessary to establish a resulting trust, or to set aside, burden, or qualify the legal title to land, in such manner. The phrasing of the rule has been varied but always with but the one meaning. Uniformly the court has

said the evidence must be clear, satisfactory, and convincing. The essential elements of the rule, as stated by Wright, C. J., in Noel v. Noel, supra, 1 (Clarke) Iowa 423, 425, have never been departed from, to wit:

"The legal title is concededly in the defendant. To divest it, upon the ground that he holds it, or any part of it, as trustee for the complainant, the testimony should be clear, and satisfactory. It is a rule, too well understood to need repetition, that parol testimony to establish such trust should be received with great caution, and should be clear, and such as goes distinctly to prove the facts necessary to create such resulting interest [trust]. The testimony must not be loose and equivocal. It is contrary to every correct principle, that the legal title should be divested upon parol testimony, which is not clear, satisfactory, and distinct."

See, also, Kelley v. Kelley, 189 Iowa 311, 318, 177 N. W. 45, 48 ("if the testimony, when fairly construed, is consistent with any reasonable theory which will allow the legal title to stand, no trust will be declared. Something more than a mere preponderance of the testimony is required"); Corbit v. Smith, 7 (Clarke) Iowa 60, 61a, 71 Am. Dec. 431; Sunderland v. Sunderland, supra, 19 Iowa 325, 329 (Dillon, J.), ("While a resulting trust may be established by parol evidence, such evidence must be clear, decisive and satisfactory, or the courts will not disturb the legal title. Baker v. Vining, 30 Me., 121, 1849 [50 Am. Dec. 617]"); Maple v. Nelson, 31 Iowa 322, 327, ("clear, satisfactory and conclusive"); Hyatt v. Cochran, 37 Iowa 309, 310 ("clear, satisfactory and conclusive"); Cooper v. Skeel, 14 Iowa 578, 580 ("That a trust may be established by parol testimony * * * against the face of a deed, is not denied. And yet if the point were *res integra*, we should certainly strongly incline to hold that such evidence is too dangerous, and that it should be rejected. But in the language of another, we must not 'be wiser than our predecessors' (Ambl., 409 * * *")); Smith v. Smith, 179 Iowa 1365, 1372, 160 N. W. 756, 758 ("In the absence of evidence indicating an intention to the contrary, a presumption of ownership follows the legal title. To overcome

this presumption * * * the evidence must be clear, satisfactory and unequivocal."); Olive v. Dougherty, 3 (G. Greene) Iowa 371, 373 (" * * * to constitute a resulting trust in real estate, by parol, it should be conclusively proved that the purchase money belonged to the *cestui que trust*."); Cunningham v. Cunningham, 125 Iowa 681, 687, 101 N. W. 470, 472 ("The appellee is seeking to avoid the plaintiff's legal title, and the burden is upon her to make good her claim. It is a familiar rule that the court will not overturn the legal title to property, or charge the holder of such title with an implied or resulting trust, save upon clear and satisfactory testimony. A mere preponderance of the evidence is not sufficient. It must be explicit, decisive, and leave the existence of no essential element to conjecture or to remote * * * inferences."); (This language is used practically verbatim in the four cases next cited.) In re Estate of Moore, 211 Iowa 804, 811, 232 N. W. 729; Andrew v. Martin, 218 Iowa 19, 25, 254 N. W. 67; Harnagel v. Fett, 215 Iowa 868, 871, 244 N. W. 704; Keshlear v. Banner, 225 Iowa 471, 476, 280 N. W. 631; Andrew v. Andrew, 114 Iowa 524, 526, 87 N. W. 494 ("It is well settled that one who asks to establish a resulting trust by parol evidence and engraft the same on the legal title, must do so by evidence that is clear, certain, and practically overwhelming."); (Like statement in the next six citations.) Hyatt v. First Nat. Bk. of Williams, 193 Iowa 593, 597, 187 N. W. 949; Malley v. Malley, 121 Iowa 237, 239, 96 N. W. 751 ("But the presumption in favor of the legal title, especially one which has stood unquestioned and undisturbed for many years, is so nearly conclusive that something more than a slight preponderance of the testimony is required to establish a trust."); Murphy v. Hanscome, 76 Iowa 192, 194, 40 N. W. 717; Barth v. Severson, 191 Iowa 770, 784, 785, 183 N. W. 617; Stewart v. Todd, 190 Iowa 283, 318, 173 N. W. 619, 180 N. W. 146, 20 A. L. R. 1272; Matt v. Matt, 156 Iowa 503, 520, 137 N. W. 489; Trout v. Trout, 44 Iowa 471, 474 ("The rule is well settled that in order to establish a parol trust the evidence must be clear, satisfactory and conclusive. Monroe v. Graves, 23 Iowa, 597. *One of the parties to the transaction being dead*, the proof should be clear, unequivocal and with-

out doubt and uncertainty. Childs v. Griswold, 19 Iowa, 362.'')
(italics supplied); Carr v. Craig, 138 Iowa 526, 528, 529, 116
N. W. 720; Lillie v. Owen, 147 Iowa 290, 293, 126 N. W. 188;
In re Estate of Mahin, supra, 161 Iowa 459, 467, 143 N. W.
420 (clear, satisfactory, and certain); Frame v. Wright, 233
Iowa 394, 401, 9 N. W. 2d 364, 147 A. L. R. 1154 (clear, satis-
factory, and convincing proof); (The same words are used in
the ten following citations.) Crawford v. Couch, 234 Iowa 1246,
1253, 15 N. W. 2d 633; McClenahan v. Stevenson, 118 Iowa
106, 117, 91 N. W. 925; DeFrance v. Reeves, 148 Iowa 348, 350,
125 N. W. 655; Spring v. Spring, 210 Iowa 1124, 1128, 229
N. W. 147; Butler v. Lloyd, 230 Iowa 422, 430, 297 N. W. 871;
New York L. Ins. Co. v. Clemens, supra, 230 Iowa 279, 289,
297 N. W. 253; Wagner v. Wagner, 208 Iowa 1004, 1009, 224
N. W. 583; McMains v. Tullis, 213 Iowa 1360, 1366, 241 N. W.
472; Ontjes v. MacNider, 232 Iowa 562, 586, 5 N. W. 2d 860;
Copeland v. Voge, 237 Iowa 102, 107, 20 N. W. 2d 2, 5; Nelson
v. Worrall, 20 Iowa 469, 471 (''The proof in such cases, how-
ever, we have often held should be clear and explicit, and such
as goes directly to prove the facts necessary to create the trust.
* * * And when such trust is set up years after its alleged
creation and long after the parties thereto have deceased, the
proof should be received with the greater caution, and the relief
asked should be granted only upon the most satisfactory evi-
dence. And especially so when there is no circumstance ex-
plaining the delay or justifying the party in sleeping upon his
rights.'')

Considering the evidence in the record, and keeping in
mind the above-stated rules, we have no doubt or uncertainty
that the plaintiff failed to establish that he had furnished the
whole of the consideration in performing the contract with the
Hawkeye Lumber Company, and in the acquisition of the prop-
erty in controversy. No witness corroborates him. We believe
he violated the ''dead man'' statute, section 622.4, Code, 1946,
and was incompetent to testify to the matter of consideration
on the part of his wife in a transaction for property of which
she was a grantee. And we think the objection to his competency
was sufficient. But if this testimony be admitted, we think the

evidence as a whole is insufficient. Testimony of one which cannot be contradicted must be received with caution, carefully weighed, and any reasonable doubts resolved against it. As said by Evans, J., in a similar case, Freeborn v. Servis, 182 Iowa 1350, 1352, 165 N. W. 178, of one in the situation of the plaintiff, who had testified to making all the payments on the purchase price of the property, the spouse being dead:

"Such a claim is easily made, and is difficult to disprove. It therefore calls for great scrutiny, and we have considered the claim herein with some scepticism."

Plaintiff's testimony has too many improbabilities and inconsistencies that are unexplained. His testimony was equivocal and many times he claimed not to remember matters on cross-examination. On the whole, plaintiff's evidence was neither clear, satisfying, nor convincing.

■ III. But, if we concede the evidence established that he had furnished all of the consideration, this does not make his case. There is also the presumption that, even though his wife paid no part of the consideration, the purchase of this property in her name was prima facie a gift, advancement, or conveyance for her benefit, to her. This, also, is a well-settled principle of law in this state and generally. It is thus stated, in Andrews v. Oxley, supra, 38 Iowa 578, 580, after reference to the general rule stated in Division I of this opinion, to wit:

"So that usually, in the absence of all rebutting circumstances, proof that the purchase money was furnished by one and the conveyance made to another, is sufficient to create an implied trust in favor of the former. But where the purchaser stands in the relation of parent or husband to the one in whose name the title is taken, a counter presumption arises. In such case the moral obligation of the parent or husband, to provide for the wife or child, gives rise to a presumption that a conveyance to either is made from motives of natural love and affection, in discharge of this moral obligation. And in such case this latter presumption must be removed, before it can be declared that the estate is held in trust. See Second Story's Equity, §§ 1202, 1204, and cases cited."

Mossestad v. Mossestad, 183 Iowa 311, 312, 167 N. W. 83, 84, is a case quite on "all fours" with the one before us. The plaintiff survived his wife, who held title to a house and lot in Lake Mills. A decree against the defendant husband and in favor of the appellees, who were heirs of the wife, was affirmed. Evans, J., speaking for the court, said:

"The defendant appellant pleaded and introduced evidence to prove that he purchased and paid for the property in question, and took the deed in the name of his wife. He contends, therefore, that she held the title in resulting trust for him. * * * While it is true, ordinarily, that the payment of the purchase price and the taking of title in the name of another raises a presumption of resulting trust in favor of the party paying the price, this presumption does not obtain in favor of a husband who pays the price and takes title in the name of his wife. In such a case, a presumption of gift or advancement arises, and the deed is presumed to carry to the wife the full legal and equitable ownership. In other words, it is presumed that the wife was intended to be a beneficiary, and not a trustee. This general proposition is not contested by the appellant."

This court has repeatedly reannounced this principle of law. Wood v. Brolliar, 40 Iowa 591, 593; Sunderland v. Sunderland, supra, 19 Iowa 325, 328, 329; Cecil v. Beaver, 28 Iowa 241, 245, 4 Am. Rep. 174; Hoon v. Hoon, 126 Iowa 391, 393, 102 N. W. 105; Andrew v. Andrew, 114 Iowa 524, 525, 87 N. W. 494; Phillips v. Phillips, 90 Iowa 541, 543, 544, 58 N. W. 879; Cotton v. Wood, 25 Iowa 43, 45, 46; Acker v. Priest, 92 Iowa 610, 618, 61 N. W. 235; Hayes v. Dean, 182 Iowa 619, 625–628, 164 N. W. 770; McGinnis v. Edgell, 39 Iowa 419, 424; Mullong v. Schneider, 155 Iowa 12, 15, 134 N. W. 957; DeFrance v. Reeves, supra, 148 Iowa 348, 350, 125 N. W. 655; Turner v. Lambert, 198 Iowa 507, 509, 510, 199 N. W. 415, 416 ("Assuming, however, that the legal title and ownership of all the money so paid was in D. W. Lambert at the time of the purchase, yet the taking of title by him in the name of his wife presumptively conferred upon her the full legal and equitable ownership thereof. Such a transaction, as between husband and wife, does not create a resulting trust in favor of the husband, as having

paid the purchase price. Where the wife is made a grantee, under such circumstances, the husband is presumed to have intended a gift to or settlement upon her, and such presumption can be overcome only by very clear and 'practically overwhelming' evidence.''); Wright v. Wright, 189 Iowa 921, 928–932, 179 N. W. 100; In re Estate of Kennedy, 154 Iowa 460, 465, 466, 135 N. W. 53; Culp v. Price, 107 Iowa 133, 135, 136, 77 N. W. 848.

It will be noted from the decisions cited in this division that the burden was on the plaintiff to rebut the presumption that the conveyance of a. half interest in the property was a gift or advancement to, or a settlement upon, his wife. He was required to plead that this was not the fact. In speaking of this presumption, the court, in Hoon v. Hoon, supra, 126 Iowa 391, 393, 102 N. W. 105, said:

''This presumption is not conclusive * * * and may be overcome by clear and satisfactory proof; but to permit the introduction of such proof the party asserting the trust must plead something more than the fact that the parent's money paid for the land while the deed was made to the child. *In other words, he must allege the facts on which he relies to overcome the presumption to which the matters just stated give rise.*'' (Italics supplied.)

It is doubtful whether plaintiff properly pleaded this issue. But we have no difficulty in reaching the conclusion that the presumption of the gift, advancement, or settlement was not overcome by plaintiff. Giving his evidence the most favorable construction, it nevertheless falls far short of the probative value and character required to rebut the presumption. It must be clear, satisfactory, convincing, and practically overwhelming.

It appears clear to us that this exchange of properties was just the ordinary transaction of that kind. The wife had sold her home and they were acquiring another. It was only the natural and right thing that she should have an interest in the new home. Her name was not put in the deed by mistake or inadvertence. It was there because it was intended to be and

should be there. Her husband had it placed there because it was a moral obligation and a protection owed her on his part. His contention that he was in the dark about the whole matter and knew nothing about the closing of the exchange transaction and never saw the deed is entirely too fantastic and bizarre for belief. In all likelihood he was present when the deeds were exchanged and the Hoar deed was delivered to him. But if his own story be accepted, he knew the title was in both of them when he saw the tax receipt in the spring of 1936. If there had been a mistake, inadvertence, or overreaching, he knew it then. And it was his duty to disavow the matter then, and that is what he would have done had such been the case, instead of waiting until almost two years after his wife's death to bring the matter up.

IV.  Mrs. Sinclair received title to her interest in the property when the deed was delivered, on or about its execution, on January 29, 1935. This suit was not begun until more than ten years thereafter. Defendants' defense that the suit was barred by the expiration of the statutory limitation period was good and should have been sustained.

V.  The defense of laches was also established. The statute of limitations had run against the suit. We find that plaintiff had knowledge of all matters on which he based his suit for more than ten years prior to bringing it. Under the decisions of this court, the statute of limitations is ordinarily applicable to actions in equity as well as at law. Relf v. Eberly, 23 Iowa 467, 469; Dwight v. City of Des Moines, 174 Iowa 178, 187, 156 N. W. 336, 340; Anderson v. Anderson, 234 Iowa 277, 282–285, 12 N. W. 2d 571, and authorities cited.

"A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances." Withrow v. Walker, 81 Iowa 651, 657, 47 N. W. 893, 895.

See, also, Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422; Copeland v. Voge, 237 Iowa 102, 109, 20 N. W. 2d 2, 6; Wokoun v. Jameson, 183 Iowa 956, 966, 167 N. W. 676; 10 R. C. L. 395, section 142. Mere delay in the prosecu-

tion of an action, or lapse of time alone in asserting a claim, is not ordinarily laches. But where the demand is unduly stale, and, in addition to the lapse of time, the delay and postponement of action are unfair to the opposing party, and he has been damaged or prejudiced thereby and it would be inequitable to enforce the claim, the defense of laches should be allowed and enforced. See Jennings v. Schmitz, 237 Iowa 580, 589, 20 N. W. 2d 897, 903, and authorities cited.

It is our conclusion that the wholly uncalled-for delay for so many years until the death of the wife, who was the only person other than the plaintiff that had knowledge of how the property was paid for, and who furnished all or any part of the consideration, necessarily hindered and prejudiced the defendants in their rights and in the defense in this action.

The decree, therefore, should be, and it is, reversed and remanded with instructions to dismiss the suit of plaintiff, and to take such further proceedings, if any, as may be proper concerning the affirmative relief prayed for by defendants.— Reversed and remanded.

All JUSTICES concur.