MINNIE A. FREEBORN et al., Appellants, v. IDA C. SERVIS, Appellee.

TRUSTS: Resulting Trust—Payment by One, Title Taken by Another—Evidence. Claims for resulting trusts arising out of alleged payments by one with title taken in another, asserted for the first time after the death of the legal holder, should be scanned with *great* scrutiny. But evidence reviewed, and held sufficient to sustain such a claim on the part of a sur-

viving wife, even though her prior conduct was inconsistent with such later claim.

**COSTS: Bond for Costs—Assignment of Claim to Nonresident. The fact that plaintiff has, since the institution of his action, assigned his claim to a nonresident, is not ground for exacting a bond for costs from plaintiff. (See Sec. 3849, Code Supp., 1913.)**

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

NOVEMBER 26, 1917.

REHEARING DENIED MARCH 12, 1918.

SUIT to partition real estate. The defendant claimed to be the absolute owner of the real estate involved, and therefore denied the interest of the plaintiffs therein. The real question at issue was whether the defendant was the beneficial owner of the property, the legal title to which was held in his lifetime by J. H. Servis, the deceased husband of the defendant. The defendant's claim was that she paid the purchase money for the property, and the title was taken by her husband in his own name, in resulting trust for her. In the district court, there was a decree in her favor, and the plaintiffs have appealed.—*Affirmed.*

*G. D. Thompson* and *R. G. Remley*, for appellants.

*Wesley Martin*, for appellee.

EVANS, J.—I. The property in contro-versy is a business lot in Webster City, Iowa, described as the center one third of the north half of Lot 8, Block 82. The legal title to this property was in J. H. Servis, the husband of the defendant. He died intestate, in the year 1913, leaving no issue, and leaving his mother as his only heir, and the defendant as his widow. Since that time, the mother has died, leaving the plaintiffs as her only

1. TRUSTS: resulting trust: payment by one, title taken by another: evidence.

heirs at law. They each claim a one-half interest in one half of the property of the estate of J. H. Servis, deceased, conceding to the defendant the ownership of the remaining one half thereof. Three other pieces of property are involved in this partition proceeding, but no controversy is presented as to any of such.

The property in controversy was acquired by contract in the year 1906 for a purchase price of $500. The last $400 of this sum was payable in instalments of $15 per month. The defendant widow testified that she conducted the oral negotiations for this property, and that she made all the payments on the purchase price. Such a claim is easily made, and is difficult to disprove. It therefore calls for great scrutiny, and we have considered the claim herein with some scepticism. Needless to say, we have directed our special attention to corroborating circumstances, pro and con.

As corroborating the apparent legal title of J. H. Servis, it appears that the written contract with the vendor was made directly with Servis, and signed by him alone; that thereafter, he paid the taxes thereon; that, for some part of the time thereafter, he leased it and collected rent thereon; that subsequently, he sold it to Gillispie, and later foreclosed the purchase money mortgage and reacquired the title under sheriff's deed; that, in the last few years of his life, he occupied the building with a secondhand store, and also used a room in the second story as a real estate office. The defendant was appointed administratrix over her husband's estate, and listed the property as a part thereof. She also reported the rents collected since the date of his death. On the other hand, it appears that, beginning about the year 1899, Mrs. Servis was in the millinery business, and occupied this property under lease, which contained a proviso giving her the first privilege of purchase. The property was owned by the Iowa Loan and Trust Company,

of Des Moines.   In the management of the property, Hoff-
man, cashier of one of the Webster City banks, acted as
agent for the owner.   Hoffman, now a nonresident, testi-
fied as a witness on behalf of the defendant.  The sub-
stance of his testimony was that the oral negotiations for
the purchase of the property were made through him, and
were with Mrs. Servis, and that all the payments were made
through him, and by him remitted to  the owner, and that
such payments were made by Mrs. Servis.   The actual pur-
chase occurred in the latter part of May, 1906, while Mrs.
Servis was a tenant thereof with her millinery business.
She continued her occupancy until she sold out her business,
about a year later.   Vigorous argument is directed against
the testimony of Hoffman, because of some inaccuracies in
his direct evidence, which were corrected by him later, after
an exhibit of the written contract.   For instance, he testi-
fied in the first instance that Mrs. Servis signed the con-
tract.   An examination of the contract shows that this was
not correct.   We are quite satisfied that the discrepancies
thus appearing in the testimony of this witness were not
such as to impeach his candor.   He was entirely disinter-
ested in the result of the case.   There could be no motive
for wilfully falsifying concerning the form of the contract,
because the presence of the written contract itself was
neither in doubt not in dispute.   It further appears that
Mrs. Servis sold out her millinery business in 1907 to Mrs.
Briles, and that Mrs. Briles continued the occupancy of the
premises for a month or more.  ·She paid the rent to Mr.
Servis.   Thereafter, the property was rented by Mrs. Servis
to Claybaugh, who occupied it for some period of time, and
paid the rent directly to Mrs. Servis.   Claybaugh testified
as a witness to that effect.

The general circumstances surrounding Mr. and Mrs.
Servis are quite consistent with the claim of the defend-
ant.   The parties were married in 1882.   They appear to

have been without means. Mr. Servis had engaged in several modest lines of business. He was a traveling salesman, for a time in the hardware business; also in the organizing of lodges; also in the harness business, at two or three different times; also in the furniture business; also in the secondhand business; also in the real estate business.

As already indicated, Mrs. Servis was also in business, for several years. It appears without dispute that her business was profitable. Mr. Servis had been sickly, for some years before his death, which occurred when he was fifty-one years of age. The total property acquired by the pair consisted of the property in controversy and two other pieces of property of a similar kind. The decedent also had an interest in certain property as heir of his father. All the property acquired by the pair appeared in the name of the husband. Nothing appears to have been taken in the name of the wife, at any time. The married life of the pair appears to have been happy, and without distrust. The property in controversy since its acquisition has been improved at a large expense. It is the claim of Mrs. Servis, in her testimony, that she paid all such expense. Much of it has been incurred by her since the death of her husband. She has been somewhat inconsistent in her conduct, but she had much distraction and anxiety in the long illness of her husband. Her attitude as administratrix in listing the property as a part of the estate of her husband was inconsistent with her present attitude. Her explanation is that she supposed she had to do it, because it was in his name. Though she had had years of experience in the millinery business, her general knowledge of business and of legal rights appears to have been quite womanlike, and not clear. She does not seem to have been a shrewd or designing woman, nor one who was greatly concerned over her legal rights, as between herself and her husband. The hus-

band's death was foreshadowed for a long time, and the long years of nursing furnished abundant occasion for solicitude on her part as to her own protection. She appears, however, to have been quite oblivious of herself then, and we should not allow too severe inferences to be drawn now from her mistakes. Some stress is laid by appellant upon the fact that she has filed a claim for $2,000 against the estate for money advanced. The merits of that claim are in no manner before us. It does not include the items claimed to have been paid for the property in controversy. We cannot, therefore, consider it. If it has no merit, it will be disallowed in the proper forum. Taking a bird's-eye view of the activities of this pair during their married life, it would seem reasonable to believe that some part of the little property acquired by them was so acquired through the earnings of the defendant. Her wifely willingness to allow everything to be taken in the name of her husband was creditable to her, and should not now be pressed too deeply as a thorn into her flesh.

Upon a careful consideration of all the circumstances appearing in the record, we have become convinced that the trial court properly found a resulting trust in favor of the defendant.

II.   A motion for security for costs was filed by the defendant, and was submitted with the case. The ground thereof is that plaintiff Minnie A. Freeborn has assigned her cause of action to her brother, George E. Servis, who is a nonresident of the state. If the fact were controlling, no proof of it appears before us. We think, however, that the fact is not controlling. The right to security for costs is statutory. The only statutory ground to sustain such motion after the filing of an answer is that the plaintiff has become a nonresident since the filing of such answer. Nothing of the kind is claimed here-

2. Costs: bond for costs: assignment of claim to nonresident.

in. Whether the defendant is in any manner affected by the transfer from one plaintiff to the other, so far as the question of costs is concerned, we need not determine. The motion is overruled. The decree below is—*Affirmed*.

GAYNOR, C. J., LADD and SALINGER, JJ., concur.