AMY SPRING, Appellant, v. FRANK X. SPRING, Executor, et al., Appellees.

No. 39904.

FEBRUARY 11, 1930.

REHEARING DENIED SEPTEMBER 26, 1930.

*B. A. Dolan,* for appellant.

*Ralph B. Smith,* for executor, appellee.

*Burrows & Burrows,* for the other appellees.

EVANS, J.—I. The plaintiff's action is predicated on that form of resulting trust involved and defined in *Cotton v. Wood,* 25 Iowa 43, and which was briefly stated therein as follows:

"Where, upon the purchase of property, the consideration is paid by one, and the legal title conveyed to another, a resulting trust is thereby raised, and the person named in the deed will hold the property as trustee of the party paying the consideration."

The foregoing pronouncement has been followed and elaborated in a long line of our cases, a few of which are. the following: *Freeborn v. Servis,* 182 Iowa 1350; *In re Estate of Mahin,* 161 Iowa 459; *Culp v. Price,* 107 Iowa 133; *Dunn v. Zwilling Bros.,* 94 Iowa 233.

The property involved was purchased on September 22, 1906. The negotiations for the purchase were had jointly with plaintiff and Edward J. Spring, but the final execution of instruments appears to have been had with Edward J. Spring alone. These two parties were at  that time contemplating marriage. The plaintiff insisted that a home be first acquired. Edward had no money for that purpose. The plaintiff had a savings account of $480 in the bank, and offered to devote the same to the purchase. The purchase price of the property in question was $1,250. $500 was paid as a down payment. A mortgage was given for the balance, of $750. Edward J. Spring was named in the deed of conveyance

as sole grantee. He was likewise the sole maker of the mortgage. At a later time, a new mortgage was signed by both parties. The mortgage debt was drawn payable in monthly installments. It is the claim of the plaintiff that she herself undertook to, and did, pay all the monthly installments, and that the mortgage was fully paid and discharged by her in March, 1919. The burden is upon the plaintiff to establish by clear and satisfactory evidence the essential facts upon which she relies in support of her beneficial ownership. The first of these is her claim that, of the first $500 payment, she paid $450, and that Edward paid only the sum of $50. This claim is satisfactorily proved. No question of admissibility of evidence is presented. The plaintiff's own testimony is well corroborated, both by circumstances and by direct evidence. The more important circumstance is dis-. closed by the records of the bank in which she had her deposit in September, 1906. These show that she did have at that time a savings account in such bank for $480, and that, on September 21, 1906, she drew therefrom the sum of $450. That Edward had no property of his own, and no visible resources at that time, is undisputed. Both parties were at that time employees of the same employer, at $9.00 per week each.

As to the payment of the mortgage, subsequent chronology is to be considered. The parties were married on December 10, 1906. From that time they occupied the property as their home. Except for two years, the plaintiff engaged in profitable employment throughout her married life. The rate of wages received by her exceeded that of her husband. The continuity of her employment far exceeded that of her husband. The successive employers of plaintiff were disclosed in her testimony, and the rate of wages received by her. One employment lasted for nine years. Her evidence in this regard, if not true, was susceptible of contradiction. It is, however, wholly undisputed. Likewise, her testimony as to the alleged monthly payments made by her upon the mortgage, if untrue, was susceptible to contradiction. The mortgage was held by, and the payments were made to, a building and loan association, whose records were presumptively available. This evidence was undisputed. On the other hand, the husband throughout his married life was afflicted with ill health, which greatly impaired his earning capacity while employed, and greatly interrupted the continuity of his employment. His dis-

ability gradually increased, rather than improved, until he finally had become helpless and deformed. The defendant introduced evidence showing certain of his employments. But such evidence discloses employment covering a period of not more than three or four years. Indisputably, the mortgage was paid by March, 1919. It is clear, upon this record, that the husband could not have paid it out of his earnings. This fact is clearly corroborative of the testimony of the plaintiff on the subject.

There is some evidence tending to show small payments by the husband, which might be referable to his ownership of an aliquot part of the property.

Upon the whole record, we deem it clearly proved that, in the initial transaction, plaintiff paid 9/10 of the purchase price, and the husband paid 1/10 thereof; that a resulting trust was created thereby in favor of the plaintiff to the extent of 9/10 of the property; that her subsequent monthly payments upon the mortgage fully protected her interest, and fully met her obligation as the *cestui que trust* in 9/10 of the property as her aliquot part. She is, therefore, entitled to a decree establishing such resulting trust and her ownership thereunder, unless some of the affirmative contentions of the defendant should be sustained.

II. The defendant-executor pleaded an estoppel. It appears that the married life of this pair had its unhappiness. In 1924, the husband brought a suit for divorce, and failed therein.

He left the home, and lived with his mother, who devoted to him a mother's care. The plaintiff continued to occupy the property as her home, and was so occupying it at the time of the trial below. The husband died testate in February, 1926. In his will he directed that all his property, whether exempt or not, be devoted to the payment of his debts, and that the residue be paid to his wife. He had no property, other than his interest in this homestead. His indebtedness largely exceeded the full value of the homestead. He named his brother as his executor. The plaintiff ignored the will. The executor served notice upon her, requiring her election whether she would take under the will or not. She ignored the notice. It is contended, therefore, by the executor that she is now bound to take under the will, and that for such reason she is estopped to prosecute the present action.

It is sufficient answer to this contention that the will was operative only to transfer the property of the testator himself, and that the estoppel upon the plaintiff, if any, operates only upon her rights in the estate of her husband. She was required to elect whether she would take under the statute or under the will. By her attitude, she refused to take under either. Her present action is not inconsistent with such attitude. She is claiming nothing herein under the statute, nor yet under the will. She is simply claiming her own property, as she avers it to be. If it be true that the title of this homestead was held by the testator in resulting trust for the plaintiff, such fact was in no manner affected by the executor's notice to elect. The notice could not operate to enlarge the estate of the testator. If the title to the property was in him as the mere trustee of a resulting trust, it was no less so after the notice to elect than it was before such notice.

We hold, therefore, that the notice to elect was effective only as bearing upon the rights of the plaintiff under the statute, as a surviving spouse. Her own property rights, if any, were not affected thereby.

III. The defendant-executor purports to plead in a single sentence the statute of limitations. No fact is pleaded or proved as a basis therefor, except the mere lapse of time. A trustee is presumed to hold his title, as such, in the interest of his beneficiary, and not in hostility thereto. Mere lapse of time, therefore, without more, does not start the statute of limitations. See *In re Estate of Mahin,* 161 Iowa 459, and *Freeborn v. Servis,* 182 Iowa 1350.

IV. The appellee has filed a motion to dismiss the appeal. The motion is predicated upon events transpiring subsequent to the decree below, which are alleged to have terminated the plaintiff's right of appeal. The major event, in brief, is that the appellee has enforced the decree, and, pursuant to a subsequent order of the court, has sold the property in controversy for the payment of debts. The appellant failed to file a supersedeas bond, nor did she obtain any stay of proceedings below. The appellee, therefore, did have the power to proceed with enforcement of his decree. This

is always true, in the absence of supersedeas. But in such a case it is also true that an appellee exercises such power of enforcement at his own risk of restitution, if reversal be had. A supersedeas bond is not requisite as a basis of appellate jurisdiction. The absence of a supersedeas did not deprive the appellant of the right to be heard on the merits of the appeal. In the event of a reversal in such a case, the appellee gains nothing by his exercise of the power of enforcement. It is urged by appellee that an innocent third party has bought the property, and should be protected. He is not a party to the appeal, and is not before us, in any legal sense. What his rights may be, we have no occasion to consider; nor, in any event, can they shield the appellee from the operation of the final adjudication.

We hold that the decree below should have awarded to the plaintiff 9/10 of the homestead property as her aliquot part thereof in her own right. It is, accordingly,—*Reversed*.

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.