# IN THE COURT OF APPEALS OF IOWA

No. 20-0200
Filed November 30, 2020

**IN THE MATTER OF THE JOHN F. DYBVIK REVOCABLE TRUST,**

**JULIE ANDERA,**
         Appellant/Cross-Appellee,

**vs.**

**NOLA DYBVIK, JED DYBVIK and FIRST CITIZENS BANK f/k/a FIRST CITIZENS NATION BANK, Trustee of the John F. Dybvik Revocable Trust,**
         Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Winneshiek County, Alan T. Heavens, Judge.

The trust beneficiary appeals the adjustment to her trust share based on her improper actions as a trustee. **AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

James Burns and Dana DeSimone (until withdrawal) of Miller, Pearson, Gloe, Burns, Beatty & Folta, P.L.C., Decorah, for appellant.

Shaun Thompson of Newman Thompson & Gray PC, Forest City, for appellees Nola Dybvik and Jed Dybvik.

Collin M. Davison of Heiny, McManigal, Duffy, Stambaugh & Anderson, P.L.C., Mason City, for appellee First Citizens Bank.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

After forcing narratives designed to create more monies for her, Julie Andera finds herself with the scars from a losing battle. Two court battles over trust monies bring us to this appeal. By the time of his death in April 2015, John Dybvik (Dybvik) accumulated assets of approximately $6,134,126.[1] Before passing, he lived with his fiancée, Andera,[2] and had two adult children from a different relationship, Nola and Jed Dybvik.[3] Although Andera and Dybvik lived together, they never married. Over the course of their relationship, Dybvik suffered from a series of health problems, and he died after a bout with terminal cancer. As an estate plan, Dybvik created the John F Dybvik Trust (Trust) in 2002. He amended it in 2014. Under that Trust, Dybvik named Andera as successor trustee if he could not serve. The Trust provided she would receive ten percent of the adjusted gross estate with the remainder split between Jed and Nola, with principal distributions to his children to occur in the future.

After Dybvik's death in April, Andera became trustee. But by December, Jed and Nola were unhappy with Andera's actions as trustee, and petitioned for her removal, urging that she breached her fiduciary duties. After a trial, the district court removed Andera as trustee in March 2017 and appointed First Citizen's Trust (First Citizens) as successor trustee. The district court confirmed Andera engaged

---

[1] This number represents the "adjusted gross estate" value as defined in the Trust, which is important in addressing the appropriate distribution to Andera.
[2] Andera moved into the Dybvik home on January 1, 2014. Their relationship began in 1993.
[3] To avoid confusion and to track the ruling of the district court, we will refer to Dybvik's children as Nola and Jed. In some pleadings Nola is called Nola Wradislavsky.

in self-dealing, delayed trust accountings, and made unsupported claims for money. The 2017 ruling also addressed Andera's claim that she and Dybvik had a common law marriage. The district court rejected that premise.

With the new trustee in place, work on the trust plan required a distribution of Andera's ten percent share. Complicating matters were various decisions made by Andera as a trustee that cost the Trust significant sums of money. Serving as successor trustee, First Citizens argued Andera (1) caused federal and state tax penalties plus interest because of late filed estate and inheritance tax returns and (2) incurred additional tax for failing to timely make an alternative value election. First Citizens also requested reimbursement for rent Andera owed under the previous court ruling. The bank offered Andera this proposed distribution of her share:

| AMOUNT | DESCRIPTION |
|---|---|
| $613,412.60 | Ten percent of the adjusted Taxable Estate using date of death values |
| $(105,079.10) | Inheritance tax, penalties and interest ($88,012.00 + $17,067.05) |
| $(101,824.00) | Additional tax related to failure to elect alternate value on the federal estate tax return (IRS Form 706 tax difference $281,650.00 - $179,826.00) |
| $(133,303.12) | Penalty and interest on IRS Form 706 due to late filing |
| $(5,750.00) | House rent due (Court Order at p. 8: rent period June 1, 2015 to April 30, 2017, totally 23 months at the rate of $250.00 per month) |
| **$267,456.38** | **PROPOSED DISTRIBUTION** |

Andera rejected the plan, so First Citizens applied in September 2019 for court approval of a distribution of $267,456.38 to Andera. Andera responded with her own plan. Under her proposal, the Trust would pay Andera for her unpaid work while serving as trustee ($58,691.40), credit the tax on the alternative value issue

with the capital gain savings related to the stepped-up basis ($40,729),[4] and reimburse her for payment on a loan made for a farm purchase ($15,000). First Citizens disputed these requests and then filed for an award of sanctions against Andera. Nola and Jed intervened in the trust matter as beneficiaries with an interest in the outcome and joined the First Citizen's motion for sanctions. With no agreement on the distribution, the parties proceeded to a bench trial. The district court defined the "fighting issue" as whether Andera's trust share should be reduced because of errors she made as trustee. The district court authored a distribution plan for Andera's share and awarded Andera trustee fees. Sanctions against Andera were denied. The distribution approved by the court was:

| | |
|---|---|
| Julie's 10% Share in the Trust: | $613,412.60 |
| Reduction for Iowa Inheritance Tax: | $88,012.00 |
| Reduction for Tax Penalties and Interest: | $150,370.17 |
| Reduction for Alternative Value: | $101,824.00 |
| Reduction for Rent: | $5,750.00 |
| Increase for Trustee Fees: | $20,000.00 |
| | |
| Andera's Trust Distribution: | $287,456.43 |

Andera appeals; and Nola, Jed, and First Citizens cross-appeal.

**Standard of Review:**

"Proceedings concerning the internal affairs of a trust, including proceedings to compel the trustee to account to the beneficiaries are tried in equity." *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013); *see also* Iowa Code § 633.33 (2019) (listing matters to be tried as law actions and noting that "all other matters triable in probate shall be tried by the probate court as a proceeding in equity"). Cases tried in equity are reviewed de novo. *See Trimble,*

---

[4] As of the bench trial in this matter, this number was increased to $88,000.

826 N.W.2d at 482; *see also* Iowa R. App. P. 6.907. "We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented." *In re Scheib Tr.*, 457 N.W.2d 4, 8 (Iowa Ct. App. 1990). "[W]e give weight to the probate court's findings, but we are not bound by them." *Trimble*, 826 N.W.2d at 482. We accord the district court considerable discretion in taxing fiduciary fees. *In re Estate of Gaeta*, No. 13-1719, 2014 WL 5862037, at *2 (Iowa Ct. App. Nov. 13, 2014).

We review a district court's denial of sanctions under an abuse of discretion standard. *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). Although our review is for an abuse of discretion, we will correct erroneous application of the law. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991). Still, if supported by substantial evidence, the district court's findings of fact are binding on us. *Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992).

**Andera's Appeal Issue:**

Andera narrows her appeal to focus on the court's decision to deduct the assessed penalties and interest from the form 706 tax filings against her trust share ($150,370.17).

*Reduction of Andera's Share.*

Sometimes the answer to a question requires a review of the history. Such is the case here. Back when the district court ruled in the March 2017 proceeding, it concluded Andera engaged in self-dealing. Although Andera pushed the notion of a common law marriage to frame her claims, the district court disagreed and found she delayed accounting responsibilities related to the Trust and Dybvik estate for her potential benefit. The district court noted in this earlier proceeding,

"[t]he bulk of the trial presentation . . . pertained to [Andera's] claims for money under theories of a common law marriage, partnership, and compensation for services provided [Dybvik] during his lifetime. Those claims did not directly pertain to [Andera's] administration of the trust." Yet the district court removed Andera as trustee for self-dealing and rejected her claims for more money.

Now, in this current case, the question is should Andera's share of the trust distribution be reduced by the assessed penalties and interest ($150,370.17) from the delinquent 706 tax filings? As we noted, after a hearing, the district court itemized the final distribution to Andera:

| | |
|---|---|
| Julie's 10% Share in the Trust: | $613,412.60 |
| Reduction for Iowa Inheritance Tax: | $88,012.00 |
| Reduction for Tax Penalties and Interest: | $150,370.17 |
| Reduction for Alternative Value: | $101,824.00 |
| Reduction for Rent: | $5,750.00 |
| Increase for Trustee Fees: | $20,000.00 |
| | |
| Andera's Trust Distribution: | $287,456.43 |

Andera points to Trust terms that protect her from liability for decisions she made in her administration of the Trust. She references paragraph 8.8, entitled "Liability of Trustees." That paragraph reads:

> No person or corporation acting as a trustee hereunder shall at any time be held liable for a mistake of law and/or fact for an error of judgment, nor for any loss or injury coming to any trust estate or to any beneficiary thereof (or to any beneficiary under this trust agreement or to any other person) except as a result of actual fraud or willful misconduct on the part of the trustee to be charged.

Addressing the Trust terms, the district court observed that a trustee will not be relieved from liability under the Iowa Trust Code if the breach of trust is "committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the

interest of the beneficiary, or for any profit derived by the trustee from the breach."

Iowa Code § 633A.4505(1).  The district court found:

> To the contrary, the Court finds credible evidence that [Andera] purposefully delayed filing the returns while she was pursuing a claim to be [Dybvik's] common law spouse.  [Andera] stood to recognize a significant financial benefit from the Trust if she was [Dybvik's] spouse but she faced significant problems in claiming that status which included the fact that she was not legally married to [Dybvik], they filed separate tax returns, and no court had ever declared that the relationship they had with each other qualified as a common law marriage.
>
> Had [Andera] filed a tax return while her common law spouse claims were pending, she would have had to indicate [Dybvi"s] marital status for legal and tax purposes was not "married."  The delay in filing the tax returns caused the late filing penalties and interest to be incurred.  The Court views [Andera's] decision to pursue her common law spouse claim at the expense of filing a timely and accurate tax return was an intentional act of gross negligence done with reckless indifference to what might happen to the shares of Jed and Nola if the Trust had to pay price that comes with not meeting tax deadlines.

Andera disputes these findings by arguing the "record is devoid of evidence supporting the court's conclusion."  Although the court earlier disagreed, Andera argues that under her good-faith belief that she had a common law marriage with Dybvik, she, as a spouse, did not have to file a federal form 706 return.  Plus, she contends that any mistake in judgment does not meet the standard required to require payment.  Finally, she argues she relied on the advice of counsel in tax matters.  But, the Trust paragraph 8.8 cannot be used to relieve Andera, as trustee, from her responsibility to the courts or her duties to the trust beneficiaries.  *See Keating v. Keating*, 165 N.W. 74, 77-78 (Iowa 1917).

We consider the district court's finding from the 2017 trial that Andera engaged in self-dealing that she attempted to justify through her common law marriage theme.  We are bound by these findings from the earlier decision.  *See*

*Weishaar v. Snap–On Tools Corp.*, 582 N.W.2d 177, 180 (Iowa 1998) (explaining that issue preclusion bars further litigation on a specific issue). In the earlier action between the Dybvik children and Andera the court determined:

> In the instant case, the Court finds self-dealing by [Andera] in that she has continued to occupy [Dybvik's] home, without compensating the trust for her use of the residence. [Andera] attempts to justify her actions by relying on her claim of a common law marriage; however, this Court finds no credible evidence supporting that claim. In addition to self-dealing, [Andera] unreasonably delayed any type of accounting of trust and estate property. She filed multiple claims for money, without evidentiary support. She acknowledged she did not expect to recover on all claims. From her testimony it appears she expected to increase her chances of recovery, by filing multiple claims. Her interest in securing additional monies for herself from the trust, conflicts with her duties as trustee. Good cause and a material breach of trust (self-dealing) exist for [Andera's] removal as trustee.

Here, the pattern continues. Andera used the common law marriage claim to advance her quest for more monies from the trust. She failed to timely file the 706 tax forms with the hope she might gain a one-third spousal share of the Trust, rather than her ten percent interest in the Trust. That action led to additional cost to the trust in tax liability, penalties, and interest. *See Orud v. Groth*, 708 N.W.2d 72, 79 (Iowa 2006) (noting trustees are prohibited from engaging in self-dealing transactions with the trust and from obtaining personal advantage from their dealings with trust property). Andera breached her duty to not engage in self-dealing, and the consequence is she must repay the resulting costs of that breach. *See* Martin D. Begleiter, *Son of the Trust Code–the Iowa Trust Code After Ten Years*, 59 Drake L. Rev. 265, 343 (2011) (citing Restatement (Third) of Trusts § 78 cmt. 8 (Am. Law. Inst. 2007)). We affirm the district court's reduction of Andera's ten-percent share by $150,370.17 for the tax penalties and interest.

**Cross-Appeal Issues:**

*Trustee Fees.*

The district court rejected Andera's claim for trustee fees in the amount of $58,691.40, and instead ordered a payment of $20,000 as the reasonable trustee fee for legitimate trustee work performed during her tenure. First Citizens, Nola, and Jed appealed this decision. If the terms of the trust do not specify the trustee's compensation, a trustee or co-trustee is entitled to compensation reasonable under the circumstances. Iowa Code § 633A.4109. Andera served as the trustee for about two years. The district court heard testimony and reviewed the itemized statement for fees. Andera testified:

> So I did basically everything that needed to be done. So from the financial side,—Like I said, I'm not an expert to knowing every part of the law. I was—Todd helped direct too. I said, yeah, you can see the visit to make sure with the life insurance people, the investors, because we had to get an EIN number, you know, because there's Social Security—the Social Security number that was no longer valid.
>
> So all this required time. Lots and lots of contacts because there was a lot of individuals required to be contacted. Other things, like I said, equipment issues, there were things that happened with equipment that needed repair.
>
> All the corn, we still had all the corn. So there was—there had been some bushels that had been—I want to say—contracted by John. Yes, there had; but the bins were full, and all that corn needed to be marketed yet. So there was a lot of time spent contacting different providers or different cooperatives to determine and try to find best prices for selling corn. Contacts for then making those—making the sales happen but then getting—Everything had to be loaded and taken. So contacting semi drivers. A lot of other things went into administering.
>
> One of the—probably the really large projects was preparing for the farm auction. There was a lot of farm equipment and, you know, I tried to proceed exactly how John wanted this. These were things we knew—at some point, we knew would be inevitable. Had not expected—You know, we were anticipating a few years based on the information we had been given by the physicians.

Certainly, we talked through things to plan and prepare so I would know what to expect, too, even more. But one of the things he had suggested was selling the farm equipment actually relatively soon before it would lose value but just to have that part done. There was a mortgage, you know, to be paid. There was payments on the combine that needed to be done. So kind of cleaning up all this debt so it would all be accomplished. So all those kinds of things. There was a lot of—a lot of business that was done. When the books were handed over to the new trustee, there was more than a million dollars in the checking account of which I had kept track of and tried to have all itemized and, like I said, had worked with Todd through all of this too. I was doing things to the best of my ability and yet trying to maintain a life, and I had a work life too because you know what? I wasn't—I wasn't getting a penny for this, and I still had life bills.

Under the abuse-of-discretion standard, we cannot say that the reduction of trustee fee to $20,000 is unreasonable under the circumstances. Iowa Code section 633A.4109 governs compensation for trustees, but the district court has considerable discretion in the allowance of such fees. *See In re Woltersdorf*, 124 N.W.2d 510, 511 (Iowa 1963). The reduction considers the complaints made about inappropriate charges for mowing or taking care of Dybvik's dog, but also recognizes the work performed selling crops, working with insurance carriers, paying trust bills, and other trustee functions.[5] Finding no abuse of discretion, we affirm the trustee fee award of $20,000.

*Sanctions.*

Emotions drive this sanction request. The primary purpose of sanctions under Iowa Rule of Civil Procedure 1.413(1) is deterrence, not compensation. *See Barnhill*, 765 N.W.2d at 276. Although First Citizens requested sanctions from the district court, it makes no request for sanctions in this appeal. In a passion-laced

---

[5] Even Nola and Jed admit in their brief that Andera performed "legitimate work" as trustee during her two-year tenure, but they assert her efforts provided no benefit to the Trust.

brief, Nola and Jed urge some punishment against Andera for many of her demands and actions involving the Trust. Some of that emotion permeated in the trial, and the district court noted in response to an objection, "I agree with what appears to be the consensus among these parties that their personal relationship between [Nola] and Ms. Andera is not relevant." And in this trust-distribution matter, Nola and Jed repeat allegations they made in their original lawsuit against Andera. Finding the appropriate remedy for Andera's missteps in the administration of the Trust was a reduction of her share, no sanctions were ordered by the court. And while Nola and Jed alerted Andera they would seek sanctions if she pursued claims for trustee fees, the district court found she was entitled to additional reasonable fees, although not at the amount requested. *See In re Roehlke's Estate*, 231 N.W.2d 26, 27 (Iowa 1975) (noting that while not bound by them, we do defer to a trial court's findings of fact).

Here, the district court could assess the witnesses. And although the court did not agree with Andera's ultimate position on her claims, it found she had a basis—both in fact and in law—for asserting her theories. *See Rowedder v. Anderson*, 814 N.W.2d 585, 591 (Iowa 2012) (finding it important that the attorney did not take his actions in bad faith and "his actions were not vindictive or willful insofar as to suggest he acted with evil intent."). We agree with the district court that sanctions were not appropriate in this case.

**Conclusion:**

For the reasons set out above, we affirm the district court on all issues raised in this appeal.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**